# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

TRAYON L. WILLIAMS,

    *Defendant.*

Case No. 15-10181-01-EFM

## MEMORANDUM

This matter comes before the Court on the Government's Objection Number 1 to the Presentence Investigation Report ("PSR") (Doc. 38) prepared in this case. The Government objects to Paragraph 25 of the PSR, which classifies Williams's base offense level as 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(A). The Government argues that that Williams's base offense level should be 20 based on application of § 2K2.1(a)(4)(A), because his prior conviction for aggravated battery constituted a "crime of violence" under the U.S. Sentencing Commission Guidelines Manual ("Guidelines"). The Court reviewed the parties' arguments contained in the addendum to the PSR, and heard the parties' oral arguments at the sentencing hearing held on March 31, 2017. At the hearing, the Court sustained Government's Objection Number 1 to the PSR. The memorandum that follows states the Court's reasons for sustaining the Government's objection.

## I. Factual and Procedural Background

On August 22, 2016, Defendant Trayon L. Williams entered a plea of guilty to possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). Before Williams's sentencing, the U.S. Probation Office prepared a PSR, which calculated Williams's base offense level as 14 pursuant to U.S.S.G. § 2K2.1(a)(6)(A). Section 2K2.1(a) describes the applicable base offense levels for offenses under 18 U.S.C. § 922(g)(1), and provides a base level of 14 if the defendant "was a prohibited person at the time the defendant committed the instant offense . . . ."

The PSR detailed Williams's criminal history, which included a 2014 conviction for aggravated battery in Sedgwick County District Court. The journal entry for that case stated that Williams pleaded guilty to aggravated battery, in violation of K.S.A. § 21-5413(b)(1)(B)(g)(2)(B), a "Felony, Severity Level 7." The PSR did not classify this offense as a "crime of violence," so Williams's base offense level was 14. The Government objected to this calculation, arguing that the aggravated battery conviction constitutes a "crime of violence," and therefore Williams's base offense level should be 20.[1]

## II. Discussion

The Government contends that Williams's conviction under K.S.A. § 21-5413(b)(1)(B) qualifies as a "crime of violence" under the Guidelines because it "has as an element the use,

---

[1] *See* U.S.S.G. § 2K2.1(a)(4)(A) ("Base Offense Level . . . 20, if—the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a crime of violence . . . ."); *Id.* § 2K2.1(a)(6) ("Base Offense Level . . . 14, if the defendant . . . was a prohibited person at the time the defendant committed the instant offense . . . .").

attempted use, or threatened use of physical force against the person of another."[2]  In making this argument, the Government relies heavily on *United States v. Treto-Martinez*,[3] which held that an offender's violation of Kansas's earlier aggravated battery statute, K.S.A. § 21-3414(a)(1)(C), involves the use or threatened use of physical force and thereby qualified as a "crime of violence" under the Guidelines.[4]

Williams disagrees with the Government's position for two reasons.  First, *Treto-Martinez* considered the predecessor version of the statute under which Williams was convicted.  According to Williams, the revised statute at issue here "contains a diluted scienter requirement, permitting conviction based on 'knowing' conduct."  He contends that the Tenth Circuit "has consistently held that intentional conduct is required to support a federal enhancement, and that a 'knowing' scienter element does not meet that standard."  Second, Williams asserts that the Supreme Court's decision in *Mathis v. United States*[5] "dooms the rationale of cases like *Treto-Martinez*."  Under Williams's interpretation of *Mathis*, the Supreme Court "abrogated Tenth Circuit law concerning the definition of an "element," which requires this Court to focus only on the elements of the state offense."  "*Treto-Martinez* violates that rule by speculating how the offense might be committed in an ordinary case instead of examining only the elements of the state offense."

The parties agree that if Williams's conviction for aggravated battery qualifies as a "crime of violence," it does so only under the "elements clause" of the Guidelines.  Under that

---

[2] *See* U.S.S.G. § 4B1.2(a) (defining the term "crime of violence" for purposes of § 2K2.1(a)).

[3] 421 F.3d 1156 (10th Cir. 2005).

[4] *Id.* at 1159–60.

[5] 136 S. Ct. 2243 (2016).

clause, an offense is considered a "crime of violence" if it is punishable by imprisonment for a term exceeding one year, and it "has as an element the use, attempted use, or threatened use of physical force against the person of another."[6] The parties further agree that the Kansas aggravated battery statute, K.S.A. § 21-5413, is a divisible statute that lists multiple alternative elements defining multiple crimes such that the Court may consult state court documents to determine the specific crime of conviction.[7] The Government cites the Journal Entry of Judgment, which states that Williams pleaded guilty to a violation of K.S.A. § 21-5413(b)(1)(B)(g)(2)(B), a "Felony, Severity Level 7."

The journal entry's reference to "(g)(2)(B)" corresponds to § 21-5413(g)(2)(B), which specifies that aggravated battery "as defined in . . . subsection (b)(1)(B) . . . is a severity level 7, person felony." Thus, it appears that Williams was convicted under § 21-5413(b)(1)(B), and the journal entry's reference to (g)(2)(B) was simply to indicate that the offense is a severity level 7, person felony. Because the parties agree that this is the correct analysis, the Court concludes that Williams was convicted under § 21-5413(b)(1)(B). That provision prohibits "knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."[8]

Subsection (b)(1)(B) is therefore divisible because it sets out elements of the offense in the alternative, creating two distinct offenses. First, § 21-5413(b)(1)(B) criminalizes "knowingly causing bodily harm to another person with a deadly weapon" ("aggravated battery with a deadly

---

[6] U.S.S.G. § 4B1.2(a)(1).

[7] *See Mathis*, 136 S. Ct. at 2249.

[8] K.S.A. § 21-5413(b)(1)(B).

-4-

weapon").[9] Second, it criminalizes "knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted."[10] Unfortunately, the parties did not provide any additional records pertaining to Williams's conviction. Therefore, the Court must "turn to the plain language of the [Kansas] statute itself to determine if, standing alone, it would support the crime of violence enhancement."[11] In other words, the Court must separately analyze both offenses: (1) aggravated battery with a deadly weapon, and (2) aggravated battery in any manner whereby great bodily harm can be inflicted.

To support the crime of violence enhancement, both offenses must have as an element "the use, attempted use, or threatened use of physical force" against another person. This analysis has two components. First, the offense must have as an element the "use" of force. And second, the amount of force must be sufficient to constitute "physical force."

### A. Aggravated Battery With a Deadly Weapon

#### 1. The "Use" of Force

Williams argues that his conviction cannot qualify as a "crime of violence" because both aggravated battery offenses under K.S.A. § 21-5413(b)(1)(B) have a *mens rea* of "knowingly." He contends that the "Tenth Circuit has squarely and repeatedly held that only offenses with an intent element are crimes of violence under the guidelines. Because the prior conviction at issue here did not have intent as an element, it is not a crime of violence."

---

[9] *See State v. Steele*, 2016 WL 7178789, at *3 (Kan. Ct. App. 2016) (" 'Aggravated battery' includes 'knowingly causing bodily harm to another person with a deadly weapon.' ") (citing K.S.A. § 21-5413(b)(1)(B)).

[10] *See State v. Bradford*, 2016 WL 7429318, at *1 (Kan. Ct. App. 2016) ("As we just indicated, K.S.A. 2015 Supp. 21-5413(b)(1)(B) criminalizes 'knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted.' ") (ellipsis in original).

[11] *United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005).

Under the elements clause, an offense is a "crime of violence" if it "has as an element the *use*, attempted *use*, or threatened *use* of physical force . . . ."[12] In *Leocal v. Ashcroft*,[13] the U.S. Supreme Court interpreted the word "use" in the elements clause of 18 U.S.C. § 16. Noting that a crime of violence must be one that involves the "use . . . of physical force," the Court observed that " 'use' requires active employment."[14] The Court then held that "use" requires "a higher degree of intent than negligent or merely accidental conduct."[15] In light of *Leocal*, the Tenth Circuit further clarified that the word "use" requires a higher degree of intent than recklessness.[16] And with these principles in mind, the Tenth Circuit has "unequivocally held that the text of [U.S.S.G.] § 4B1.2 only reaches purposeful or intentional behavior."[17]

To date, the Tenth Circuit has not addressed whether an offense with a *mens rea* of knowingly can satisfy the use of physical force requirement in order to be classified as a crime of violence under § 4B1.2's elements clause. However, the Tenth Circuit has provided some guidance, albeit in the context of violent felonies under the Armed Career Criminal Act ("ACCA").[18] First, the Tenth Circuit has previously found offenses with a *mens rea* of knowingly to be violent felonies under the ACCA's elements clause. For example, in *United

---

[12] U.S.S.G. § 4B1.2(a)(1) (emphasis added).

[13] 543 U.S. 1 (2004).

[14] *Id.* at 9.

[15] *Id.*

[16] *See United States v. Zuniga-Soto*, 527 F.3d 1110, 1124 (10th Cir. 2008).

[17] *United States v. Armijo*, 651 F.3d 1226, 1236 (10th Cir. 2011).

[18] "The language defining 'violent felony' in 18 U.S.C. § 924(e)(1) is virtually identical to the guidelines language defining 'crime of violence' under U.S.S.G. § 4B1.2(a). *United States v. Rooks*, 556 F.3d 1145, 1149 (10th Cir. 2009). Case law interpreting one phrase is persuasive to courts interpreting the other phrase. *United States v. Jackson*, 2006 WL 991114, at *2 (10th Cir. 2006).

*States v. Hernandez*,[19] the court concluded that a Texas conviction for "*knowingly* discharg[ing] a firearm at or in the direction of . . . one or more individuals" qualified as a violent felony under the elements clause of the ACCA.[20] Second, in *United States v. Ramon Silva*,[21] the court concluded that the "presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA."[22] The court then held that an offense requiring proof of general criminal intent is sufficient to satisfy the ACCA's elements clause.[23]

Under this framework, the Court concludes that the word "use" in the elements clause of the Guidelines encompasses offenses (such as Williams's aggravated battery conviction) with a *mens rea* of knowingly. To begin, "knowingly causing bodily harm to another person" necessarily requires "active employment."[24] The Kansas Supreme Court has stated that in order to obtain an aggravated battery conviction, the State must prove "that the accused *acted* when he or she was aware that his or her conduct was reasonably certain to cause the result."[25] Thus, unlike accidental, negligent, and reckless—"knowingly" requires the offender to take action,

---

[19] 568 F.3d 827 (10th Cir. 2009).

[20] *Id.* at 829–30 (emphasis added); *see also United States v. Herron*, 432 F.3d 1127, 1137–38 (10th Cir. 2005) (concluding that a Colorado conviction for "knowingly plac[ing] or attempt[ing] to place another person in fear of imminent serious bodily injury" "easily" satisfies the requirement of the threatened use of physical force against the person of another.").

[21] 608 F.3d 663 (10th Cir. 2010).

[22] *Id.* at 673.

[23] *Id.* at 673–74.

[24] *See Leocal*, 543 U.S. at 9 (concluding that the word " 'use' requires active employment.").

[25] *State v. Kershaw*, 302 Kan. 772, 359 P.3d 52, 59 (2015) (emphasis added); *see also State v. Hobbs*, 301 Kan. 203, 340 P.3d 1179, 1185 (2015) ("K.S.A. 2011 Supp. 21-5413(b)(1)(A) requires proof that an aggravated battery defendant acted while knowing that some type of great bodily harm or disfigurement of another person was reasonably certain to result from the defendant's action.").

aware that his or her conduct was reasonably certain to cause the result. Put another way, aggravated battery only encompasses malfeasance,[26] while accidental, negligent, and reckless conduct can encompass nonfeasance, or the failure to act.[27] Accordingly, "knowingly causing bodily harm to another person" necessarily requires an offender to take action when he or she was aware that his or her action was reasonably certain to cause bodily harm. Unlike in *Leocal*, the degree of intent here—knowingly—does in fact require "active employment."

Next, this decision accords with the Tenth Circuit's pronouncement that "§ 4B1.2 only reaches purposeful or intentional behavior."[28] Although an offense cannot constitute a crime of violence if it reaches behavior that is not "purposeful" or "intentional,"[29] there is no requirement that the offense be a specific intent crime. Rather, a general intent crime can constitute a crime of violence under the elements clause. In *Ramon Silva*, the court effectively eliminated any perceived distinction between specific intent and general intent crimes. There, the court held that a plea of no contest to aggravated assault, which requires proof of general criminal intent, "was an admission of intentional conduct."[30] In reaching this decision, the court noted that proof of

---

[26] Black's Law Dictionary (10th ed. 2014), Malfeasance ("A wrongful, unlawful, or dishonest act.").

[27] Black's Law Dictionary (10th ed. 2014), Nonfeasance ("The failure to act when a duty to act exists."). *See* Pattern Instructions Kansas—Criminal § 52.010 (2016) ("A defendant acts recklessly when the defendant consciously disregards a substantial and unjustifiable risk . . . ."); *Leocal*, 543 U.S. at 9 ("While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident.").

[28] *Armijo*, 651 F.3d at 1236.

[29] *See United States v. Duran*, 696 F.3d 1089, 1093 (10th Cir. 2012).

[30] *Ramon Silva*, 608 F.3d at 673.

general criminal intent has "consistently" been defined by New Mexico courts "as conscious wrongdoing or the purposeful doing of an act that the law declares to be a crime."[31]

Not only did *Ramon Silva* equate "general criminal intent" with "intentional conduct," but it expressly disavowed the notion that an offense must have an element of specific intent in order to constitute a crime of violence or violent felony.[32] Here, an aggravated battery conviction under K.S.A. § 21-5413(b)(1)(B) requires proof of general criminal intent,[33] which the Kansas Supreme Court has defined as "the intent to do what the law prohibits."[34] And because general intent crimes fall under the same umbrella as specific intent crimes, the Court concludes that aggravated battery only encompasses "purposeful or intentional behavior."

Furthermore, the Circuit Courts of Appeal that have addressed this precise issue have unanimously held that general intent crimes still constitute crimes of violence under the Guidelines' elements clause.[35] For example, in *United States v. Melchor-Meceno*,[36] the Ninth

---

[31] *Id.* at 673; *see also State v. Wilson*, 147 N.M. 706, 228 P.3d 490, 494 (2009) (referring to general criminal intent as "the requirement that a defendant generally intend to commit the act."); *State v. Stewart*, 138 N.M. 500, 122 P.3d 1269, 1278 (2005) ("General criminal intent has been defined as acting 'intentionally,' which in turn has also been termed acting 'purposely.' "); *State v. Gonzalez*, 137 N.M. 107, 107 P.3d 547, 553 (2005) ("The element of general criminal intent is satisfied if the State can demonstrate beyond a reasonable doubt that the accused purposely performed the act in question." (citation, quotation, and alteration omitted)); *State v. Santillanes*, 130 N.M. 464, 27 P.3d 456, 469 n.5 (2001) ("General criminal intent means the purposeful doing of an act that the law declares to be a crime." (citation and quotation omitted)).

[32] *Ramon Silva*, 608 F.3d at 673 (concluding that the "presence or absence of an element of specific intent does not dispositively determine whether a prior conviction qualifies as a violent felony under the ACCA.").

[33] K.S.A. § 21-5202(i) specifies that when the mental culpability requirement for a crime is "knowingly," it is a general intent crime. *State v. Hobbs*, 301 Kan. 203, 212 (2015).

[34] *In re C.P.W.*, 289 Kan. 448, 213 P.3d 413, 417 (2009).

[35] *See, e.g.*, *United States v. Romo-Villalobos*, 674 F.3d 1246 (11th Cir. 2012) (holding that resisting officer with violence statute, a general intent crime which requires offender to "knowingly and willfully" resist, constitutes a crime of violence for purposes of the elements clause" of U.S.S.G. § 2L1.2(b)(1)(A)(ii)); *United States v. Velasco*, 465 F.3d 633, 639–40 (5th Cir. 2006) (upholding a sixteen-level enhancement where the predicate statute required that it be violated either intentionally or knowingly to sustain a conviction); *see also United States v. McDaniel*, 2016 WL 5371859, at *4 (D. Kan. 2016) (concluding that Kansas aggravated assault constituted a crime of violence

Circuit found a conviction for felony menacing under Colorado law categorically qualified as a crime of violence. The Colorado statute required a threat that knowingly placed another in fear of imminent serious bodily injury. The Ninth Circuit stated, "menacing is a general intent crime that requires the defendant to knowingly place another person in fear . . . . Therefore, the predicate offense of menacing includes the requisite *mens rea* of intent for a crime of violence."[37] Indeed, "[k]nowledge is a sufficiently culpable mental state to qualify as crime of violence."[38] The Court is unaware of any Circuit Courts of Appeal that have held otherwise.

Thus, Williams's plea of no contest to aggravated battery, which required proof of general criminal intent, was an admission of purposeful or intentional conduct. Accordingly, the Court concludes that the offense of knowingly causing bodily harm to another person with a deadly weapon necessarily requires the "use" of force.

   2.   *Use of "Physical Force"*

Having concluded that aggravated battery with a deadly weapon requires the "use" of force (active employment), the Court turns its analysis to whether "knowingly causing bodily harm with a deadly weapon" requires the use of a sufficient level of force. Under the Guidelines, an offense must have as an element the use, threatened use, or attempted use of "physical force."

---

because statute required defendant to "*knowingly* cause 'reasonable apprehension of immediate bodily harm' with a deadly weapon." (emphasis in original)).

[36] 620 F.3d 1180 (9th Cir. 2010).

[37] *Id.* at 1186.

[38] *United States v. Palacios-Gomez*, 643 F. App'x 614, 615 (9th Cir. 2016) (holding that defendant's conviction for aggravated robbery is a "crime of violence" because "he acted with at least the mens rea of knowledge . . . ."); *see also United States v. Melchor-Meceno*, 620 F.3d 1180, 1184 (9th Cir. 2010) (holding that a Colorado menacing statute "includes the requisite mens reas of intent for a crime of violence" because it "requires the defendant to knowingly place another person in fear of imminent serious bodily harm.").

"The Supreme Court has clarified that the amount of force required to satisfy the elements clause is '*violent* force—that is, force capable of causing physical pain or injury to another person.' "[39]

A conviction under K.S.A. § 21-5413(b)(1)(B) requires proof that the defendant caused "bodily harm." In Kansas, "bodily harm" is defined as "any touching of the victim against the victim's will, with physical force, in an intentional hostile and aggravated manner."[40] It can constitute "slight, trivial, minor, or moderate harm," and can include "mere bruising."[41] This does not rise to the level of violent force prescribed by *Johnson*.[42] Therefore, the Court must decide whether § 21-5413(b)(1)(B) satisfies the requisite violent force necessary because it contains the additional element of a "deadly weapon."

To answer this question, *United States v. Treto-Martinez*[43] is instructive. In *Treto-Martinez* the Tenth Circuit analyzed Kansas's previous aggravated battery statute which contained nearly identical language to the statute in this case.[44] There, the court conclusively determined that "intentionally causing bodily harm to another person with a deadly weapon"[45] qualified as a crime of violence. The court wrote: "There is no dispute that [K.S.A.

---

[39] *United States v. Mitchell*, 653 F. App'x 639, 644 (10th Cir. 2016) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).

[40] Pattern Instructions Kansas—Criminal § 54.310 (2016).

[41] *State v. Green*, 280 Kan. 758, 127 P.3d 241, 246 (2006).

[42] *See Johnson*, 559 U.S. at 137–38 (holding that a "Florida felony offense of battery by actually and intentionally touching another person [does not have] as an element the use of physical force" because the offense may occur by the slightest offensive touching (alterations and internal quotation marks omitted)); *see also United States v. Smith*, 652 F.3d 1244, 1247 (10th Cir. 2011) (concluding that Oklahoma assault and battery statute does not contain the requisite "physical force" necessary to constitute a violent felony under the ACCA because "under Oklahoma law, mere offensive touching satisfies the requirement for force in a battery.").

[43] 421 F.3d 1156 (10th Cir. 2005).

[44] *Id.* at 1158–60 (analyzing Kansas's former aggravated battery statute, K.S.A. § 21-3414(a)(1)(B), (C) (repealed 2011)).

[45] K.S.A. § 21-3414(a)(1)(B) (repealed 2011).

§ 3414(a)(1)(B)] contains the requisite language to support a finding that Treto-Martinez's conviction was for a 'crime of violence.' "[46] Unfortunately, that was the extent of the court's analysis of § 3414(a)(1)(B) before moving on to § 3414(a)(1)(C).

The provision Williams pleaded guilty to, § 21-5413(b)(1)(B) mirrors § 21-3414(a)(1)(B) word-for-word, with the single exception that "intentionally" was replaced with "knowingly" in the current statute.[47] Because there was "no dispute" that the predecessor statute contained the requisite physical (or violent) force necessary to satisfy the elements clause, the Court must reach the same result here.

The fact that the predecessor statute contained specific criminal intent as opposed to general criminal intent is of no consequence. As discussed above, both "intentionally" and "knowingly" committing a battery constitute the "use" of force. The issue here is whether the statute Williams pleaded guilty to has as an element the use of "physical force." And based on the Tenth Circuit's pronouncement that there is "no dispute" that the predecessor statute—which contains identical language to the current statute—constitutes a crime of violence,[48] the answer must be in the affirmative.

Although the Tenth Circuit's analysis of § 3414(a)(1)(B) was brief and conclusory, one can surmise the court's rationale from its analysis of § 3414(a)(1)(C). Subsection (a)(1)(C) from the predecessor statute defined aggravated battery as "intentionally causing physical contact with

---

[46] *Treto-Martinez*, 421 F.3d at 1159.

[47] *Compare* K.S.A. § 21-3414(a)(1)(B) (repealed 2011) ("intentionally causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted."); *with* K.S.A. § 21-5413(b)(1)(B) ("knowingly causing bodily harm to another person with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted.").

[48] *Treto-Martinez*, 421 F.3d at 1158–59.

another person when done in a rude, insulting or angry manner with a deadly weapon . . . ." The court

> conclude[d] that physical force is involved when a person intentionally causes physical contact with another person with a deadly weapon. Although not all physical contact performed in a rude, insulting or angry manner would rise to the level of physical force, we conclude that all intentional physical contact with a deadly weapon done in a rude, insulting or angry manner does constitute physical force under § 2L1.2(b)(1)(A). Thus, a person who intentionally touches another with a deadly weapon in a "rude, insulting or angry manner," uses physical force by means of an instrument calculated or likely to produce bodily injury which goes well beyond other, less violent, forms of touching such as grabbing a police officer's arm.[49]

The same analysis applies here. Except, as the Government points out, the statute now under consideration, § 21-5413(b)(1)(B), requires proof of *bodily harm* whereas the statute analyzed above, § 21-3414(a)(1)(C), merely required *physical contact*. Obviously, the Government argues, "causing 'bodily harm' involves a greater degree of harm than causing 'physical contact.' " The Court agrees. It is clear that anyone who "caus[es] bodily harm to another person with a deadly weapon" uses physical force by means of an instrument calculated or likely to produce bodily injury.[50] Even if the bodily harm is minor, "the manner in which the physical contact with a deadly weapon must occur to violate the Kansas statute clearly has an element the 'threatened use of physical force.' "[51]

In response, Williams argues that the U.S. Supreme Court's decision in *Mathis v. United States*[52] abrogates *Treto-Martinez*. According to Williams, the court in *Treto-Martinez*

---

[49] *Id.* at 1159.

[50] Kansas defines "deadly weapon" as "an instrument which, from the manner it is used, is calculated or likely to produce death or serious bodily injury." Pattern Instructions Kansas—Criminal § 54.310 (2016); see also *State v. Colbert*, 244 Kan. 422, 769 P.2d 1168 (1989).

[51] *Id.* at 1160.

[52] 136 S. Ct. 2243 (2016).

improperly focused not solely on the elements of the crime (and, more specifically, whether the statute requires the use or threatened use of force) but on the likely result of the crime in an ordinary case (and, more specifically, whether the victim of an aggravated battery under the statute would normally perceive a threat of the use of physical force). Williams contends that the results-only approach utilized in *Treto-Martinez* conflicts with the elements-only approach endorsed by the Supreme Court in *Mathis* and utilized by the Tenth Circuit in *United States v. Zuniga-Soto*,[53] and *United States v. Perez-Vargas*.[54]

As the Government points out, this exact argument was rejected by Judge Lungstrum in *United States v. McMahan*.[55] The Court agrees with Judge Lungstrum's analysis and rejects Williams's efforts to undermine *Treto-Martinez* for the same reasons.

First, *Zuniga-Soto* and *Perez-Vargas* are both distinguishable from *Treto-Martinez*. Both of the statutes at issue in *Zuniga-Soto and Perez-Vargas* allowed for convictions based on reckless or negligent conduct.[56] But, as Judge Lungstrum explained,

> The Kansas aggravated battery statute [at issue in *Treto-Martinez*] does not allow for a conviction based on reckless or criminally [negligent] conduct because it does not focus on "bodily injury." Rather, the statute—unlike the statutes at issue in *Zuniga-Soto* and *Perez-Vargas*—requires that the defendant engage in "intentional . . . physical contact." Because the statute requires intentional conduct coupled with the potential for "great bodily harm," the Tenth Circuit appropriately concluded in *Treto-Martinez* that the statute necessarily requires, at a minimum, the threatened use of physical force. In fact, the Circuit summarized this distinction in *United States v. Ramon-Silva*, 608 F.3d 663, 672 (10th Cir.

---

[53] 527 F.3d 1110 (10th Cir. 2008).

[54] 414 F.3d 1282 10th Cir. 2006).

[55] 2016 WL 6083710 (D. Kan. 2016).

[56] *See Perez-Vargas*, 414 F.3d at 1285 (providing that third-degree assault occurs when a defendant "knowingly or recklessly causes bodily injury to another person or with criminal negligence he causes bodily injury to another person by means of a deadly weapon."); *Zuniga-Soto*, 527 F.3d at 1122 (concluding that defendant "could have been convicted for reckless conduct.").

2010) (*Zuniga-Soto* held that a mens rea of recklessness does not satisfy physical force requirement under § 2L1.2's definition of "crime of violence," while *Treto-Martinez* held that intentional physical contact with a deadly weapon or in a manner capable of causing great bodily harm always includes the threatened use of violent force).[57]

Here, the statute at issue also does not allow for a conviction based on reckless or criminally negligent conduct. As explained in great detail above, Williams's crime of conviction required him to engage in intentional conduct, which causes bodily harm, with a deadly weapon. The statute therefore requires both the use and threatened use of physical force.

Furthermore, the Tenth Circuit's discussion of *Treto-Martinez* in *Ramon Silva* "demonstrates that the Circuit has clearly not repudiated *Treto-Martinez* in any respect."[58] And the Tenth Circuit has continued to rely on *Treto-Martinez* as binding precedent in recent cases, including one case that was decided after the Supreme Court announced its decision in *Mathis*.[59] This leads the Court to conclude that *Treto-Martinez* was correctly decided and has not been abrogated as Williams asserts.

Accordingly, aggravated battery with a deadly weapon under K.S.A. § 21-5413(b)(1)(B) does indeed require proof of the element of the use and threatened use of *physical* force against

---

[57] *McMahan*, 2016 WL 6083710, at *3 (internal citations omitted).

[58] *Id.*; *see Ramon Silva*, 608 F.3d at 672 (describing *Treto-Martinez* as a "persuasive" decision in analyzing whether a conviction under New Mexico's aggravated assault statute constituted a violent felony).

[59] *See Mitchell*, 653 F. App'x at 644–45 (relying in part on *Treto-Martinez* in concluding that defendant's use of a dangerous weapon to commit assault necessarily includes as an element the threatened use of physical force); *United States v. Rios-Zamora*, 599 F. App'x 347 (10th Cir. 2015) ("Our opinion in [*Treto-Martinez*] makes clear than any conviction under that statute satisfies the guidelines definition of a conviction for a crime of violence."). *Mitchell* was decided by the Tenth Circuit on June 29, 2016, while *Mathis* was decided by the Supreme Court on June 23, 2016.

the person of another.⁶⁰ The offense therefore qualifies as a crime of violence under the Guidelines.

**B. Aggravated Battery Whereby Great Bodily Harm Can Be Inflicted**

Next, under K.S.A. § 21-5413(b)(1)(B), aggravated battery can also occur when a person knowingly causes "bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted." Again, the Court must decide whether this offense includes as an element the "use, attempted use, or threatened use of physical force." Above, the Court concluded that the offense of knowingly causing bodily harm to another person necessarily requires the "use" of force. Therefore, the only issue to resolve here is whether this offense includes as an element the use of "physical" or "violent" force.

"Knowingly causing bodily harm to another person" is not in itself sufficient to constitute *violent* force, that is, "force capable of causing physical pain or injury to another person."⁶¹ This is because "bodily harm" includes "slight, trivial, minor, or moderate harm," and can include "mere bruising."⁶² The issue thus becomes whether this offense contains the requisite violent force necessary because it contains the additional element of committing the offense "in any manner whereby great bodily harm, disfigurement or death can be inflicted."

---

⁶⁰ *See also United States v. Lee*, 467 F. App'x 502, 503 (7th Cir. 2012) ("Lee's situation is straightforward: the Illinois indictment charged him with causing bodily harm through use of a deadly weapon, and the use of a deadly weapon presents at least the threat of physical force."); *United States v. Dominguez*, 479 F.3d 345, 348 (5th Cir. 2007) ("However, the touching of an individual with a deadly weapon creates a sufficient threat of force to qualify as a crime of violence.").

⁶¹ *Johnson*, 559 U.S. at 140.

⁶² *Green*, 127 P.3d at 246.

The analysis here is much more straightforward. Clearly, if an offender causes another person bodily harm, in a manner "whereby great bodily harm, disfigurement or death can be inflicted" he has used "force capable of causing physical pain or injury to another person."[63] The Tenth Circuit agrees. "No matter what the instrumentality of the contact, if the statute is violated by contact that can inflict great bodily harm, disfigurement or death, it seems clear that, at the very least, the statute contains as an element the 'threatened use of physical force.' "[64]

Furthermore, the Fifth Circuit has also interpreted this exact language and arrived at the same conclusion. In *United States v. Flores-Gallo*,[65] the court interpreted Kansas's previous aggravated battery statute, addressing a provision with nearly identical language to this current provision.[66] After concluding that "causing bodily harm" alone was not sufficient to constitute physical force, the court wrote:

> But the "bodily harm" is only half of the picture. The statute requires that the harm must be conducted in a "manner whereby great bodily harm, disfigurement or death can be inflicted." So, in order to be convicted under the statute the defendant must with ill will or hostility intentionally use force that is more than mere touching and has the capability of causing significant injury.[67]

Accordingly, the court held that "the hostile intent and force used in conjunction with the risk of significant injury creates an offense which has as an element at least the threatened use of force

---

[63] *See, e.g.*, *United States v. Ceron*, 775 F.3d 222, 229 (5th Cir. 2014) ("Touching or striking that causes great bodily harm is a paradigmatic example of the use of force.").

[64] *Treto-Martinez*, 421 F.3d at 1160.

[65] 625 F.3d 819 (5th Cir. 2010).

[66] *Compare* K.S.A. § 21-3414(a)(1)(B) ("Aggravated battery is: intentionally causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted."), *with* K.S.A. 21-5413(b)(1)(B) ("Aggravated battery is: knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted."). The only difference between these two provisions is that the previous statute has a *mens rea* of "intentionally," while the current statute has a *mens rea* of "knowingly."

[67] *Flores-Gallo*, 625 F.3d at 823.

that is capable of causing physical pain or injury to another person as contemplated by *Johnson*."[68]

The Court therefore concludes that "knowingly causing bodily harm to another person . . . in any manner whereby great bodily harm, disfigurement or death can be inflicted" has as an element the use and threatened use of physical force. The offense therefore qualifies as a crime of violence under the Guidelines.

### III. Conclusion

In sum, both aggravated battery offenses contained in K.S.A. § 21-5413(b)(1)(B) constitute crimes of violence. Knowingly causing bodily harm to another person with a deadly weapon has as an element the use and threatened use of physical force. And knowingly causing bodily harm in any manner whereby great bodily harm, disfigurement or death can be inflicted has as an element the use and threatened use of physical force. Williams's aggravated battery conviction therefore constitutes a "crime of violence." Accordingly, the Court sustained Objection Number 1 to the Presentence Investigation Report.

Dated this 11th day of April, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[68] *Id.* at 824.